UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK CONWAY,<br><br>        Plaintiff,<br><br>    -against-<br><br>HEALTHFIRST, INC. and CHRISTOPHER SMITH,<br><br>        Defendants. | 21-cv-06512 (RA) |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

*Of Counsel:*
  Andrew P. Marks
  David S. Warner
  Christine L. Hogan

DORF & NELSON LLP
555 Theodore Fremd Avenue
Rye, New York 10580
(914) 381-7600
amarks@dorflaw.com
dwarner@dorflaw.com
chogan@dorflaw.com

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 5

    I.   LEGAL STANDARD ................................................................................................... 5

    II.   PLAINTIFF FAILS TO STATE PLAUSIBLE RETALIATION CLAIMS ............................... 6

    III.   THE SAC FAILS TO STATE A PLAUSIBLE CLAIM FOR FAILURE TO ACCOMMODATE .............. 9

    IV.   THE SAC FAILS TO STATE PLAUSIBLE CLAIMS FOR SEX AND AGE DISCRIMINATION ......... 11

    V.   DISCRIMINATION BASED ON PROFESSION IS NOT ACTIONABLE .......................................... 12

    VI.   CHRISTOPHER SMITH IS NOT LIABLE FOR RETALIATION OR DISCRIMINATION ..................... 13

CONCLUSION ...................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 5

*Austin v. Town of Farmington*,
    826 F.3d 622 (2d Cir. 2016) ..................................................................................................... 5

*Carr v. North Shore- Long Island Jewish Health Sys.*,
    2015 WL 4603389 (E.D.N.Y. July 30, 2015) ........................................................................... 5

*D'Amico v. City of New York*,
    159 A.D.3d 558 (1st Dep't 2018) .............................................................................................. 7

*Darcy v. Lippman*,
    356 F. App'x 434 (2d Cir. 2009) ............................................................................................. 13

*Doe v. Bloomberg, L.P.*,
    36 N.Y. 450 (2021) ................................................................................................................. 13

*Duff v. Pristine Serv., Inc.*,
    2021 WL 663981 (S.D.N.Y. Feb. 19, 2021) ................................................................... 5, 7, 11

*Ikedilo v. Statter*,
    2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020) .......................................................................... 7

*Kiley v. Am. Soc. for the Prevention of Cruelty to Animals*,
    2006 WL 3457690 (S.D.N.Y. Nov. 28, 2006) .......................................................................... 8

*Kitchen v. Phipps Houses Group of Companies,*
    380 Fed. Appx. 99 (2d Cir. 2010) ........................................................................................... 10

*Logan v. Matveevskii,*
    175 F. Supp. 3d 209 (S.D.N.Y. 2016) ..................................................................................... 13

*McKenzie v. Meridian Cap. Grp., LLC*,
    35 A.D.3d 676 (2d Dep't 2006) ................................................................................................ 8

*Meyers v. Amerada Hess Corp.*,
    647 F. Supp. 62 (S.D.N.Y. 1986) ............................................................................................. 8

*Natofsky v. City of New York*,
    921 F.3d 337 (2d Cir. 2019) ................................................................................................. 7, 9

*Neary v. Gruenberg*,
   730 Fed. Appx. 7 (2d Cir. 2018) ............................................................................... 12

*Omor v. Sera Sec. Serv., LLC*,
   2015 WL 1781368 (S.D.N.Y. April 15, 2015) ............................................................ 5

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) ........................................................................................ 5

*Patel v. NYU Langone Hosp.*,
   2021 WL 4852426 (2d Cir. Oct. 19, 2021) ............................................................... 10

*Piligian v. Ichan Sch. of Med.*,
   490 F. Supp. 3d 707 (S.D.N.Y. 2020) ......................................................................... 8

*Ray v. Weit,*
   2015 WL 1299198 (E.D.N.Y. Mar. 20, 2015) .......................................................... 10

*Super v Price Waterhouse*,
   1995 WL 498773 (S.D.N.Y. Aug. 22, 1995) ............................................................ 10

*Wang v. Phoenix Satellite Television US, Inc.*,
   976 F. Supp. 2d 527 (S.D..N.Y. 2013) ........................................................................ 5

*Weinreb v. Xerox Bus. Servs. LLC Health and Welfare Plan*,
   323 F.Supp.3d 501 (S.D.N.Y. 2018) ......................................................................... 13

*Whigham-Williams v. American Broadcasting Co.*,
   2018 WL 4042110 (S.D.N.Y. Aug. 8, 2018) .............................................................. 6

*Witchard v. Montefiore Med. Ctr.*,
   103 A.D.3d 596 (1st Dep't 2013) ................................................................................ 8

**Statutes**

N.Y.C. Admin. Code § 8-107(1)(a) ............................................................................... 10

N.Y.C. Admin. Code § 8-107(5)(n) ............................................................................... 10

Defendant HF Management Services, LLC ("HF") (incorrectly sued herein as Healthfirst Inc.) and Christopher Smith ("Smith," together with HF, "Defendants"), submit this memorandum of law in support of their motion, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Second Amended Complaint, in whole or in part, with prejudice.

## PRELIMINARY STATEMENT

Plaintiff's Second Amended Complaint ("SAC") is a turgid document incorporating telephone conversations he recorded as well as position statements HF filed with the Equal Employment Opportunity Commission ("EEOC") in response to his discrimination charge. But when stripped of Plaintiff's opinions,[1] rhetorical questions,[2] erroneous suppositions,[3] speculation,[4] aphorisms,[5] colloquialisms,[6] and inconsistencies,[7] the SAC contains only scant factual allegations that do not make sense, much less rise to the level of a plausible claim.

---

[1] *See, e.g.*, SAC ¶ 33 ("Most complaints to the EEOC are handwritten and less lucid than plaintiffs.").

[2] *See, e.g.*, SAC ¶ 22 ("How can one measure "Fast-Paced" as a job requirement?"); SAC ¶ 9 ("Why would he not be agitated by the treatment he suffered at the hands of these defendants?").

[3] *See, e.g.*, SAC ¶ 84 ("The causality assertion is irrelevant … adverse action does not require a material loss under the law.").

[4] *See, e.g.*, SAC ¶ 54 ("Smith called Plaintiff on a cell phone, presumably against Company policy."); SAC ¶ 117 ("Healthfirst likely destroyed or suppressed evidence.").

[5] *See, e.g.*, SAC ¶ 88 ("An expectation unmet is resentment in waiting."); SAC ¶ 118 ("All employers should know that they may not spin a response to a discrimination complaint like they would turn Cotton Candy: fluffing it with lies and resin-coating the language to impugn the integrity of a decent man.").

[6] *See, e.g.*, SAC ¶ 12 ("He wanted an interactive process, but Healthfirst told him to speak to the hand.").

[7] *Compare* SAC ¶ 24 ("Smith demanded Plaintiff describe his reason for accommodation") *with* SAC Ex. B at p. 7 (Conway "You want me to explain my illness. I didn't know that was required for -- Smith: "No, no, no.") and at p. 8 (Smith: "No, I do not want to know what your accommodation needs to be.")

1

As best we can decipher, Plaintiff complains that HF did not hire him and attributes that failure to retaliation (First, Second and Fifth Causes of Action), his sex (Sixth Cause of Action), his age (Seventh Cause of Action), his profession (Eighth Cause of Action), or a failure to accommodate supposed disabilities (Third and Fourth Causes of Action). As relevant here, Plaintiff Patrick Conway is a male registered nurse, now age 43, with a heart arrythmia, PTSD and anxiety. (SAC ¶¶ 1, 10) Plaintiff has a law degree, but was seeking a healthcare management position. (SAC ¶ 2) HF has an automated application process. Plaintiff did not need an accommodation to complete the application process. Furthermore, Plaintiff inquired about existing remote work opportunities for which he would need no accommodation. (SAC ¶¶ 4, 11)[8] On March 6, 2019, Plaintiff emailed HF's third-party administrator (SAC ¶ 14) regarding "accommodations," but not in relation to any specific job opportunity. Plaintiff wrote:

> I am an over forty male with Heart Disease and other joint disease. **I generally have no accommodations necessary** other than the infrequent doctor appointments and sometimes I need to wear cardiac devices such as monitors. The **only accommodation I ask [sic] is that sometimes I need a little flexibility in my schedule**. In my last ten years of work, I have not had any issues working and also completing completing [sic] law school (graduating May 2019).
>
> I have been in contact with the Health First Team, including Ms. Marissa McCredie, but due to my law school schedule have not been able to move forward.
>
> I am attaching my resume for your consideration. I have applied to several director or higher level positions (legal, compliance, quality care, in general Long Term Care and Medicaid positions) – at present **I am not looking for a field Nurse or Care Manager position**. (Emphasis added)[9]

---

[8] It is not clear from the SAC whether Plaintiff needed any accommodation for any position. He alleges that "can drive a car but would rather not;" he "must see doctors occasionally and take time off for appointments," and "can work in person, but the less, the better." (SAC ¶¶ 11-12)

[9] The SAC incorporates HF's EEOC Position Statement. (SAC ¶ 37). Plaintiff's email which is Exhibit C to that Position Statement, is attached as Exhibit A to the Declaration of Kathy Ames submitted in support of this motion. ("Ames Dec.")

2

From the transcripts of the telephone conversations - annexed to and incorporated in the SAC - it may be inferred that in May 2019, two months after his email, Plaintiff had contact with an HF recruiter about an opportunity as a remote care manager. After completing the on-line application, Plaintiff received an automated response stating that based on the required qualifications for the role, he was not selected for an interview. Believing that the only qualification for the remote care manager role was an RN license, which he possessed, Plaintiff called HF to ask why he was not interviewed. Plaintiff initially spoke with Marissa McCredie. Plaintiff recorded that call and attaches a transcript to the SAC (Ex. B). Ms. McCredie explained that there could be a number of reasons why he was not considered for a position but that she had no personal knowledge of Plaintiff's application. When Ms. McCredie asked Plaintiff if he was interested in the entry-level position, he replied:

> I had been interested in higher level positions when I went to law school was to, to be in a role of leadership or supervisory position. My last two positions were a director overall of MLTC [Managed Long-Term Care] over at Fidelis and then I was corp counsel to CEO's at four MLTCs … So I wasn't expecting that the only thing I'd be qualified for is a line level staff care manager position.

McCredie concluded the conversation by saying she was not the right person Plaintiff should be speaking with and that she would explain to her director what was going on. *Id.*

Later that day, Plaintiff spoke with Ms. McCredie's manager, Christopher Smith, and Plaintiff recorded that call, too (SAC Ex. D). Once again, Plaintiff confirmed that he was **not** looking for a nurse care manager position (Healthfirst's recruiter reached out to me "and I said I'd be looking more for a director or supervisory role.")(Tr. 10:08-10:12); ("My desire is not to be an assessment nurse or a care manager." (17:57-18:01)) The SAC alleges that "Smith derided Plaintiff's request for a reasonable accommodation and asked what Plaintiff's illnesses were." (SAC (SAC ¶¶ 4, 11) But the recording proves the opposite:

3

> Smith: You're saying the word accommodation. Accommodation for what? How to apply to a job? I'm missing something. What am I missing?
>
> Conway: You want me to explain my illness. I didn't know that was required for--
>
> Smith: No, no, no. No, OK, so you need a reasonable accommodation. I got you, that's all I needed to know.
>
> Smith: That's what I missed in the beginning of the conversation. I wasn't aware. (12:51-13:14)
>
> Smith: No, I do not want to know what your accommodation needs to be. (14:18).

After speaking with Mr. Smith, Plaintiff sent an email to the HF general mailbox stating:

> I prefer not to disclose my former and current illnesses and the information below not be shared.
>
> Previously when speaking to the Dept over the phone I had requested a part time office or full time work from home position. I was informed none were open but to keep looking. There are open telecommute positions available and I applied to the Senior Manager Care Manager position. Since the positions seem to fill even before they are removed, I am requesting a phone call screen interview.
>
> I also applied to the AVP Business Transformations position. I am not sure I can succeed in this second position as my illness does at times cut into my fatigue and stamina levels. Commuting is sometimes difficult, and I would ask for a modified or tele schedule on rare occasions. This isn't all the time…. An example would be 1 or 2 days work from home on a rare basis. Or a shortened work day occasionally to see doctors etc….
>
> Yesterday on May 21, 2019 I spoke with Chris Smith in Talent Acquisition. I want to express that Mr. Smith did not make any promises or representations, and that this email is an independent communication not arising from our conversation but from my online job search.[10]

---

[10] Ames Dec. Ex. A. Plaintiff's request for a phone call screen interview was not tied to any alleged disability. Rather, Plaintiff wanted preferential treatment to circumvent HF's application process.

# **ARGUMENT**

### I.     Legal Standard

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the plaintiff's claims for relief. *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). **"**A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016). "Although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the element of a cause of action, supported by mere conclusory statements, do not suffice." *Duff v. Pristine Serv., Inc.*, 2021 WL 663981 at *3 (S.D.N.Y. Feb. 19, 2021) (citation cleaned up).

To withstand a motion to dismiss a failure-to-hire claim, a "plaintiff must allege specific positions to which she applied and was rejected." *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D..N.Y. 2013); *see also Carr v. North Shore- Long Island Jewish Health Sys.*, 2015 WL 4603389 at * 3 (E.D.N.Y. July 30, 2015)("An essential element of a failure to hire claim is that a plaintiff allege that she applied for a specific position and was rejected."); *Omor v. Sera Sec. Serv., LLC,* 2015 WL 1781368 a *4 (S.D.N.Y. April 15, 2015)("When a plaintiff claims discrimination in the form of a failure to hire, he must allege that he applied for an available position for which he was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination."). It is undisputed that Plaintiff applied for several jobs with HF in 2019 and 2020, but those jobs varied from entry level care manager (a position Plaintiff

5

told HF he did not want) to Director of Clinical Operations (a position for which Plaintiff was not qualified). The SAC lumps the jobs together so that it is impossible to determine what job(s) Plaintiff believes he was not hired for under circumstances that suggest discrimination.[11] It is not enough to toss about phrases like, "Plaintiff was well-qualified for many of the positions he applied for" (SAC ¶ 23) or vague allegations such as "someone in the hiring process told plaintiff that Healthfirst preferred to hire nursing assessors right out of school" (SAC ¶ 119 n. 7). Neither the Court nor Defendants should be required to guess when and how Plaintiff claims he was discriminated against. For that reason, the SAC does not plausibly allege a failure to hire claim and the SAC should be dismissed. *See Whigham-Williams v. American Broadcasting Co.*, 2018 WL 4042110 at \*3 (S.D.N.Y. Aug. 8, 2018)(dismissing claims because "Plaintiff does not sufficiently allege a specific position she applied for and was rejected from").

Furthermore, even if Plaintiff were to identify a specific job he was qualified for but did not receive, Defendants motion to dismiss should be granted because there are no facts connecting that rejection to any statutorily protected activity or characteristic.

## II.     Plaintiff Fails to State Plausible Retaliation Claims

The SAC purports to state claims of retaliation in violation of the Americans with Disabilities Act ("ADA") (First Cause of Action), the Federal Rehabilitation Act (Second Cause of Action), and the New York City Human Rights Law ("NYCHRL") (Fifth Cause of Action). "[T]he elements of a retaliation claim ... are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the

---

[11] See (SAC ¶ 73)("Healthfirst *recruited* Mr. Conway for jobs; yet it couldn't find him a single one for years?" (Emphasis original)); (SAC ¶ 74)("although Plaintiff has not seen the resumes of those hired – it defies logic that he could not qualify for *any* job." (Emphasis original)).

protected activity and the adverse action." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (federal law); *Duff*, *supra,* 2021 WL 663981 at *3 (NYCHRL).

First, the SAC fails to state a claim of retaliation because, among other things, it does not identify any "protected activity" in which Plaintiff allegedly engaged. *See Ikedilo v. Statter*, 2020 WL 5849049, at *10 (S.D.N.Y. Sept. 30, 2020)(dismissing employment retaliation claim because "Plaintiff fails to plausibly allege the first element of her *prima facie* case—that she engaged in any protected activity").

Second, retaliation claims under the ADA and the Rehabilitation Act require a showing that retaliation was a "but-for" reason that the employer undertook the complained of action. *Natofsky v. City of New York,* 921 F.3d 337, 345-46 (2d Cir. 2019). The SAC provides no factual foundation from which to reasonably infer a causal connection between protected activity and Plaintiff's rejection from positions he did not want or for which he was not qualified. If anything, the SAC suggests the absence of such a connection. (SAC ¶ 78 ("For whatever reason, Healthfirst's bots targeted Conway's resume for rejection. Healthfirst did not like that he had the nerve to ask why and made his life appreciably worse."))[12] Indeed, Plaintiff appears to believe that causation is irrelevant (SAC ¶ 84 ("At a minimum, the causality assertion is irrelevant.")).

Third, assuming Plaintiff intended to allege that he was retaliated against for requesting an accommodation that he did not need in connection with a position that he has not identified, his claim under the NYCHRL must be dismissed because requesting an accommodation for a disability did not qualify as protected activity. *See D'Amico v. City of New York*, 159 A.D.3d 558, 558-59 (1st Dep't 2018) ("Neither plaintiff's request for a reasonable accommodation nor his filing

---

[12] Asking why one was not hired for a job does not amount to protected activity.

of an internal workers' compensation claim constitutes protected activities for purposes of the State and City HRLs."); *Witchard v. Montefiore Med. Ctr.*, 103 A.D.3d 596, 596 (1st Dep't 2013) ("Under both New York State and New York City Human Rights Laws, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim."); *McKenzie v. Meridian Cap. Grp., LLC*, 35 A.D.3d 676, 677-78 (2d Dep't 2006) (requesting leave as a disability accommodation is not protected activity under NYCHRL).[13]

Plaintiff engaged in protected activity when he filed a charge of discrimination with the EEOC on September 12, 2019, but he does not complain of any failure to hire by Defendants after May 2019. Instead, he alleges that he was retaliated against by HF's position statement which refuted his claims. *See e.g.*, SAC ¶ 8 ("[W]hen Plaintiff filed a charge with the EEOC, Defendants retaliated against him. Healthfirst's General Counsel lied to that agency, attacking Plaintiff as a person and denying that he asked for accommodations in any call with Healthfirst. Healthfirst acted as though it were dealing with a whining miscreant."); *see also*, SAC ¶¶ 31-36 and 69-87. But statements made by HF's lawyers during the quasi-judicial EEOC investigation – true or false – are privilege and not actionable. *See, e.g.*, *Kiley v. Am. Soc. for the Prevention of Cruelty to Animals*, 2006 WL 3457690, at *4 (S.D.N.Y. Nov. 28, 2006) ("Plaintiff's retaliation claim fails.… Her complaint states that the ASPCA made false statements in an EEOC hearing …. Making statements in administrative or arbitral proceedings is not an adverse employment action.… Thus if plaintiff were to prove her allegations, she would not establish that her employer retaliated against her."); *Meyers v. Amerada Hess Corp.*, 647 F. Supp. 62, 65 (S.D.N.Y. 1986) (finding references to an employee as "a case of burn-out" during a New York Division of Human Rights

---

[13] NYCHRL was expanded, effective November 11, 2019, to make requesting an accommodation protected activity, but that amendment was not retroactive. *Piligian v. Ichan Sch. of Med.*, 490 F. Supp. 3d 707, 724 (S.D.N.Y. 2020).

investigatory conference was pertinent to the issues in question and thus protected by an absolute privilege against liability for statements made during quasi-judicial proceedings).

For all of these reasons, the Court should dismiss Plaintiff's retaliation claims.

### III.     The SAC Fails to State a Plausible Claim for Failure to Accommodate

Plaintiff's Third and Fourth Causes of Action purport to allege a failure to accommodate his disability in violation of the ADA and the Rehabilitation Act. "To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability . . . a plaintiff must demonstrate that '(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Natofsky*, *supra* (*quoting McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). Plaintiff, however, fails to plead a plausible claim for failure-to-accommodate.

First, the SAC provides no facts from which it can plausibly be inferred that Plaintiff was disabled within the meaning of the federal laws (element one). The SAC alleges that Plaintiff "has a heart arrythmia," and suffers from PTSD and anxiety, (SAC ¶ 10), but medical conditions in and of themselves do not qualify as disabilities under federal law. To constitute a disability, the condition must substantially restrict a major life activity. The complaint contains no facts from which it may be inferred that Plaintiff is restricted in a major life activity. Moreover, the incorporated emails from the EEOC charge belie any substantial restrictions. (E.g., "In my last ten years of work, I have not had any issues working and also completing completing [sic] law school"). Mere mention of an illness is not a sufficient factual allegation of a disability and, consequently, is not sufficient to state a failure to accommodate claim. *See Patel v. NYU Langone*

9

*Hosp.*, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (*pro se* plaintiff's allegations that he has a variety of medical conditions are insufficient to support an inference of a disability); *Kitchen v. Phipps Houses Grp. of Cos.*, 380 Fed. App'x 99, 100-01 (2d Cir. 2010) (granting motion to dismiss because "although Kitchen alleges various health and maintenance problems," he "does not even identify his disability"); *Ray v. Weit*, 2015 WL 1299198, at *6 (E.D.N.Y. Mar. 20, 2015) (Plaintiff's complaint identifies vision, feet and asthma as her disabilities, but does not allege facts regarding the manner or duration of her alleged conditions. Therefore, Plaintiff's pleadings are not sufficient to give rise to a plausible ADA claim.); *Super v. Price Waterhouse*, 1995 WL 498773, at *2 (S.D.N.Y. Aug. 22, 1995) ("[T]he Complaint as presently pleaded clearly fails to state a claim based on an alleged disability, inasmuch as plaintiff fails entirely to identify her disability.").

Second, the SAC does not provide factual allegations regarding the position that Plaintiff was allegedly denied, the essential functions of that position, or the accommodation Plaintiff sought (elements 3 and 4). Plaintiff states in his EEOC charge that a "telecommute position effectively eliminates the need for accommodations," and there was some discussion between Plaintiff and Smith on the audio tape about a nurse care manager or assessment nurse position. But, as Smith explained during that recorded conversation, which Plaintiff incorporates into the SAC, the care manager position required travel. Moreover, Plaintiff stated that his desire was not to be an assessment nurse or care manager. Without specifying the position that Plaintiff claims he was unlawfully denied, it cannot plausibly be concluded that he could perform the essential functions of that position, with reasonable accommodation, or that the employer has refused to make a reasonable accommodation.

Accordingly, the Court should dismiss Plaintiff's failure to accommodate claims.

### IV.   The SAC Fails to State Plausible Claims for Sex and Age Discrimination

The SAC purports to state a claim for sex and age discrimination in violation of the NYCHRL (Sixth and Seventh Causes of Action). The sole factual allegation supporting his sex discrimination claims is contained in a footnote: "In one conversation he had with an interviewer early on, someone whom plaintiff cannot identify at this time told him that Healthfirst prefers to hire females because they ask for less money." There is a legal difference between a preference for a particular characteristic and discrimination against men. Plaintiff has not submitted any facts even suggesting that a woman was hired for a position he sought  And Plaintiff's bald assertion that "men make up a greater percentage of nurses in the profession overall" is contrary to information reported by the U.S. Census Bureau that approximately 90 percent of registered nurses are female.[14] In any event, standing alone – without identification of the speaker or the context in which the statement was allegedly made – this isolated statement does not give rise to plausible inference of sex discrimination. *See Duff*, *supra*, at *6 (comment about the "N-word" fails to raise and inference of discrimination). Accordingly, the Court should dismiss Plaintiff's sex discrimination claims.

Even more infirmed is Plaintiff's age discrimination claim, which is premised solely on the statement in the same footnote that "someone in the hiring process told plaintiff that Healthfirst preferred to hire nursing assessors' [sic] right out of school 'because they are less likely to complain about travelling." A nursing school graduation date is not a proxy for age. In fact, Plaintiff received his nursing degree in 2012, more than a decade after he graduated from college. (SAC Ex. A). Thus, there is insufficient factual allegations in the SAC to state a plausible clam that Plaintiff was discriminated against because of his age. *See, Neary v. Gruenberg*, 730 Fed.

---

[14] https://www.census.gov/library/stories/2021/04/who-are-our-health-care-workers.html  Last accessed January 31, 2022.

Appx. 7, 12 (2d Cir. 2018)(dismissing ADEA claim despite allegation that FDIC hiring practices, including a 2012 Obama Administration initiative, encouraged federal agencies to preferentially hire recent college graduates). In any event, as discussed above, Plaintiff disclaimed interest in nursing positions so that any evidence that HF preferred females right out of school for nursing positions has no relationship to alleged discrimination against Plaintiff.

V. **Discrimination Based on Profession is Not Actionable**

The SAC's eighth and final cause of action is labeled "Discrimination Based on Profession, New York City Human Rights Law." The facts that supposedly support this claim are "Defendants impugned Plaintiff because of his profession, and Smith pretended he was an attorney in an attempt to intimidate him." (SAC ¶ 138) The NYCHRL prohibits discrimination on the basis of occupation in *housing accommodations*. N.Y.C. Admin. Code § 8-107(5)(n) ("Where a housing accommodation or an interest therein is sought or occupied exclusively for residential purposes, the provisions of this subdivision shall be construed to prohibit discrimination on account of a person's occupation."). The NYCHRL does not make employment discrimination based on occupation – or profession, as Plaintiff terms it – unlawful. *See* N.Y.C. Admin. Code § 8-107(1)(a).[15]

For this reason, the Eighth Cause of Action fails to state a viable claim for relief and must also be dismissed.

---

[15] The relevant section of Section 8-107 states:

1. Employment. It shall be an unlawful discriminatory practice:

   (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person: . . . .

12

## VI.  Christopher Smith Is not Liable for Retaliation or Discrimination

The SAC's First through Fourth Causes of Action must be dismissed as against Christopher Smith because there is no individual liability under the ADA or the Rehabilitation Act.  See *Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) (summary order).   Individuals can be liable under the NYCHRL for their own discriminatory conduct, *Doe v. Bloomberg, L.P.*, 36 N.Y. 450 (2021) but the complaint contains no facts from which it plausibly may be inferred that Smith discriminated against Plaintiff because of his sex or age, or retaliated against because Plaintiff engaged in protected activity.  Accordingly, even if the SAC stated a claim against HF – which it does not – the claims against the individual defendant Smith must be dismissed.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the Second Amended Complaint. As the SAC is Plaintiffs' *third* unsuccessful attempt to allege plausible claims, and they do not purport to have any other facts, the Court should dismiss the SAC with prejudice.  *See Weinreb v. Xerox Bus. Servs. LLC Health and Welfare Plan*, 323 F.Supp.3d 501, 522 (S.D.N.Y. 2018) (dismissing the SAC with prejudice in light of the "repeated failure to plead a sustainable cause of action"); *Logan v Matveevskii,* 175 F.Supp.3d 209 (S.D.N.Y. 2016) (same; citing cases, including *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir.1978) (holding the plaintiff was not entitled to "a third go-around")).

Dated: February 18, 2022
      Rye, New York

Respectfully submitted,

/s/ Andrew P. Marks
Andrew P. Marks
David S. Warner
Christine L. Hogan

DORF & NELSON LLP
555 Theodore Fremd Avenue

13

        Rye, New York 10580
        (914) 381-7600
        amarks@dorflaw.com
        dwarner@dorflaw.com
        chogan@dorflaw.com

        *Attorneys for Defendants*