```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/30/2022

PATRICK CONWAY,

                         Plaintiff,

                         v.

HEALTHFIRST INC. and CHRISTOPHER SMITH

                         Defendants.

No. 21-CV-6512 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

       Plaintiff Patrick Conway, a registered nurse, brings this action against Healthfirst, Inc., a healthcare management company, and Christopher Smith, Healthfirst's Director of Talent, asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the New York City Human Rights Law ("NYCHRL") in connection with his efforts to obtain a position at Healthfirst. Now before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint. For the reasons that follow, the motion is granted. Plaintiff is, however, granted leave to file an amended complaint.

## BACKGROUND[1]

       Plaintiff Patrick Conway is a 43-year-old male registered nurse. He "has long held a valid Nursing License and (the equivalent of an) Associate's Degree." *Id.* ¶ 64. He also received a law degree, and after graduation, was seeking employment in healthcare management where he could potentially use the skills that he has learned both from nursing and law school. *Id.* ¶ 2. Conway

---

[1] The following facts are drawn from Plaintiff's second amended complaint and the exhibits attached thereto.

"suffers from various disabilities," including "a heart arrythmia, . . . Post-Traumatic Stress Disorder and anxiety because of a confluence of events that occurred around the diagnosis of his heart condition." *Id.* ¶¶ 1, 10.

Defendant Healthfirst is a healthcare management company. Healthfirst employees began recruiting Conway to apply for open positions at the company "beginning as early as February 2018." *Id.* ¶ 82. Specifically, he was recruited by Marissa McCredie, "a senior employee" at Healthfirst, along with two other Healthfirst employees, "Glickman and Tubens." *Id.* ¶¶ 2, 42, 62. In one conversation that he had with a Healthfirst employee "early on," the employee "told him that Healthfirst prefers to hire females because they ask for less money." *Id.* n.7. "In another conversation, someone in the hiring process told plaintiff that Healthfirst preferred to hire nursing assessors right[] out of school 'because they are less likely to complain about traveling.'" *Id.*

During his communications with the Healthfirst recruiters, Conway "inquired about accommodations." *Id.* ¶¶ 14, 77. "In his inquiry about accommodations, Mr. Conway corresponded with McCredie and Tubens, who "instructed him to contact 'Careers and Human Resources of Healthfirst.' The correspondence included several emails and calls to and from McCredie, asking about possible work accommodations and steps to initiate the process." *Id.* ¶ 77; *see also id.* ¶ 86. Specifically, Plaintiff alleges that he "required remote work." *Id.* ¶ 11. Plaintiff has asserted that he "can drive a car but would rather not," that he "must see doctors occasionally and take time off for appointments," and "*can* work in person, but the less, the better." *Id.* ¶¶ 11–12 (emphasis in original).

At some point after he initially inquired about needing an accommodation for any potential position he hoped to obtain, Conway applied for "multiple jobs" with Healthfirst. *Id.* ¶ 21. He does not allege the exact number of positions for which he applied. Some time later, Conway

received email responses to at least some of the positions that he applied for notifying him that, "Based on the required qualifications for this role, we are unable to select you for an interview." *Id.* ¶ 64. Plaintiff alleges that "[t]he Job Descriptions show the minimum requirements were an Associate's Degree in Nursing from an accredited program and a New York nursing license"— both of which he possessed. *Id.* ¶ 93. "Mr. Conway had had both (or their equivalent since 2012, seven years before the application)." *Id.*

In May of 2019, Conway contacted Healthfirst and spoke with McCredie on the phone. *Id.* ¶ 43; Ex. B. During this conversation, Plaintiff "asked her why Healthfirst deemed him not [to have] 'minimum qualifications.'" Compl. ¶ 75. McCredie explained that there are a "number of reasons why [] anyone could be rejected from the position," but that she had no personal knowledge of why he was rejected. Ex. B. at 1. After Conway explained some of the types of positions he might be interested in, McCredie informed him that she was "not the right person for him" to speak with, and that she would explain his situation to her director, Christopher Smith. *Id.* at 5. Following their call, McCredie sent an email to Conway that stated "As per our call, I just checked, and there are still 12 open telecommute positions." Compl. ¶ 99. She added that she was "sorry about all this," and that the rejections based on the required qualifications for the roles "definitely seems like a miscommunication." Ex. B at 5.

Later that day, Plaintiff spoke on the phone with Christopher Smith, Healthfirst's "Director of Talent." Compl. ¶ 39. During this call, Conway reiterated his concerns that he was not granted any interviews after being recruited by Healthfirst and requesting that he receive an accommodation, and that the reason given was that he did not possess the "required qualifications" for the roles. Ex. D at 13. Smith responded that there were several possibilities as to why he may have received that email, including that the positions were actually filled or that an employee could

have "just checked the wrong box." *Id.* at 11, 13. Smith offered to look into the problem for him, and then suggested several open positions at Healthfirst, including telecommuting roles, that Conway may be a good fit for. *Id.* at 14–17.

Following this interaction, Conway filed a complaint with the EEOC, to which Healthfirst responded with its own position statement. Compl. ¶ 31. He alleges that, during the EEOC proceedings, Healthfirst "lie[d] about what Plaintiff did or said to Healthfirst as an applicant," and made "many ad hominem—and otherwise churlish—attacks against him." *Id.* ¶ 70. During the EEOC proceedings, Healthfirst asserted that the email responses that Conway received in response to his applications were autogenerated, and that he was "less qualified than other candidates." *Id.* ¶ 71. In his complaint, Conway asserts that the emails were indeed autogenerated, and alleges that Healthfirst's "bots targeted [his] resume for rejection," *id.* ¶ 78, and that his applications were subjected to "automated resume review." *Id.* ¶ 87.

Plaintiff brings claims against Healthfirst and Smith for retaliation in violation of the ADA, the Rehabilitation Act, and the NYCHRL; failure to accommodate pursuant to the ADA and the Rehabilitation Act; as well as sex discrimination, age discrimination, and discrimination based on profession pursuant to the NYCHRL. Now before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint. The motion is granted.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).³ In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

## DISCUSSION

### I. Retaliation Pursuant to the ADA and the Rehabilitation Act

Plaintiff appears to allege that he was retaliated against both for requesting a reasonable accommodation and for filing the charge with the EEOC. *See* Compl. ¶¶ 8, 79. "The ADA prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *see* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). The Rehabilitation Act contains a "similar provision[ ] against retaliation and [is] governed in this respect by the same standards as the ADA." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To state a claim for retaliation under the ADA and Section 504 of the Rehabilitation Act, a plaintiff must plausibly

---

³ While Plaintiff is now representing himself pro se, he was represented by counsel at the time he filed his second amended complaint and opposition to Defendants' motion to dismiss. Accordingly, the Court does not "liberally construe" his complaint. *de Ganay v. de Ganay*, No. 11-CV-6490, 2013 WL 1797993, at *2 n.4 (S.D.N.Y. Apr. 29, 2013) (explaining that "a court need not liberally construe [a] plaintiff's complaint" where, although he is currently proceeding pro se, "plaintiff was represented by counsel at the time [he] filed [his] complaint").

allege that "(1) the employee was engaged in an activity protected by the ADA [or Rehabilitation Act], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno*, 183 F.3d at 159; *see also Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 33 (2d Cir. 2019).

To allege causation, a plaintiff must "plausibly plead a connection between the [adverse] act and his engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "Moreover, the plaintiff must allege that the retaliation was the 'but-for' cause of the employer's adverse action, *i.e.*, that 'the adverse action would not have occurred in the absence of the retaliatory motive.'" *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). At the prima facie stage, causation may be established: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *LaSalle v. City of New York*, No. 13-cv-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015) (same). For the foregoing reasons, Plaintiff has failed to plausible allege a claim of retaliation pursuant to the ADA or the Rehabilitation Act.

### A. Retaliation for Requesting a Reasonable Accommodation

Plaintiff argues that Healthfirst retaliated against him when it sent him the emails informing him that, "[b]ased on the required qualifications" for the roles, it was "unable to select [him] for

6

an interview." Compl. ¶ 64.[4]  Conway alleges that Defendants retaliated against him in this way because he requested a reasonable accommodation—namely, that he be able to work remotely in any future potential position with the company.  To be clear, Plaintiff does not allege that he needed an accommodation in applying for the position.  Rather, he alleges that he required an accommodation to perform the jobs for which he was applying.

Requesting a reasonable accommodation of a disability is an ADA-protected activity." *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002)).  "This is true even if the plaintiff's claim that he was entitled to a reasonable accommodation is mistaken, so long as it was made in good faith." *Id.*  While there may be a question as to whether Conway merely inquired about an accommodation or actually requested one, in making all reasonable inferences in Plaintiff's favor, the Court finds that Conway has plausibly alleged that he engaged in protected activity when he contacted Healthfirst and that he had a good faith basis to believe he was entitled to an accommodation.  He has also alleged that Defendants knew of the protected activity because he contacted and spoke with Healthfirst representatives directly about his need to work remotely. *See, e.g.*, Compl. ¶¶ 14, 77, 86.

Having satisfied the first and second elements of a prima facie case of retaliation, the Court next turns to whether Plaintiff has plausibly alleged an adverse action.  It is unclear whether the failure to hire—or even interview—a new applicant for a position can constitute an adverse employment action for retaliation purposes. *See, e.g.*, *Riddle v. Citigroup*, No. 13-CV-6833 (AKH), 2014 WL 2767180, at *3–4 (S.D.N.Y. May 29, 2014) (recognizing failure to hire as

---

[4] Neither party has addressed whether Plaintiff, as a prospective employee who has not yet been hired, can assert a claim against a potential employer for retaliation—as opposed to failure-to-hire—in violation of the ADA and the Rehabilitation Act.  Because Plaintiff's claims otherwise fail on the merits, the Court assumes without deciding that he is lawfully entitled to assert such a claim.

adverse action where former employee sued former employer for failure to rehire her after she filed an EEOC charge); *Logan v. SecTek, Inc.*, 632 F. Supp. 2d 179, 184 (S.D.N.Y. 2009) (assuming, but not deciding, that failure to hire can constitute an adverse employment action). But even assuming *arguendo* that Healthfirst's failure to interview a prospective candidate constituted an adverse action, Plaintiff's claim fails because he has not plausibly alleged a causal connection between the protected activity and the adverse employment action.

Among other things, Conway does not allege in his complaint many of the relevant dates in question, including the dates on which he initially reached out to Healthfirst about an accommodation, the dates on which he applied for open positions, and the dates on which he received the rejection emails. In light of his statement that "[a]fter the emails to Careers and Human Resources regarding a reasonable workplace accommodation, [he] was unqualified for all of them, and direct recruiting ceased," Compl. ¶ 93, the Court infers that he at least initially reached out to Healthfirst about requiring an accommodation prior to receiving the rejection emails. The Court can also infer that the rejection emails were sent at some time prior to his discussions in May of 2019 with McCredie and Smith, since Conway references the emails in these conversations.

But even inferring generally that the alleged adverse action occurred at some point after the protected activity, because Plaintiff does not identify when he first advised Healthfirst that he was requesting an accommodation or when he received the emails rejecting him from the positions, the Court cannot infer that there was any temporal proximity between his requests for accommodation and the rejection emails. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish

a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). He thus does not present any temporal evidence suggesting a causal nexus.

Moreover, Conway does not allege any facts related to Healthfirst's treatment of any other applicants who did not request an accommodation. Instead, his argument is based solely on the assertion that he met the listed minimum qualifications for these positions by virtue of his degree and nursing license, and yet was never selected for an interview based on the "required qualifications" for the roles. He points to no evidence, however, of retaliatory animus motivating these rejections.

First, it seems that at least one of the positions that Conway applied to and was rejected from was a telecommuting position—a position that inherently would allow him to work remotely, thus satisfying his request. Ex. B at 1, 4. It is unclear how the Court can infer from this fact that his rejection from at least this position was motivated by a retaliatory animus based on his request that he be able to work remotely.

Additionally, while the Court is not making any factual determinations at this time, it is worth noting that, rather than suggesting a retaliatory animus, Conway's conversations with McCredie and Smith—which occurred after he was rejected for the positions—appear to suggest the absence of any such motive. McCredie explained that she was "sorry about all this" and that the rejection of his application based on him not having the required qualifications "definitely seems like a miscommunication*."* *Id.* at 5. In his conversations with McCredie and Smith, each suggested that Healthfirst was interested in figuring out which positions might be the right fit for Conway to apply to. *See, e.g.*, *id.* at 4 ("I know we have a current [position available for] director of children's services . . . [B]ased off your resume, I don't know if that's [] the route you would w[an]t to take."); *id.* at 5 ("I think [the case manager positions are in the] department that would

9

interest you, whether it be like the supervisor or management level positions, and we'll get back to you or hopefully get back to you, you know, definitely in a timely manner."). Indeed, McCredie told him that there were twelve telecommuting positions available for him to apply to. Compl. ¶ 99. Smith too encouraged him to apply for other roles with the company:

> Somebody with your background, that's got a clinical background, that's got a compliance background, that's got experience in different plans . . . you've got some really good experience there. . . . As you're moving forward, I can look into that regulatory position. I'm really interested to speak with her because [your] legal background is something that could be very interesting to those folks.

Ex. D at 12. Like McCredie, Smith too encouraged Conway to apply to open telecommuting roles. *Id.* at 17.

The Court, therefore, is unable to infer that the decision to not interview, and by extension, not hire, Conway was motivated by any retaliatory animus. He has thus failed to allege facts that create a plausible inference of a causal nexus between his protected activity and the adverse action because he has not alleged facts suggesting that the "adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 846.

### B.  Retaliation for Filing the EEOC Complaint

To the extent that Conway is arguing that he was retaliated against for filing a charge with the EEOC, this argument too fails. While his filing of an EEOC complaint clearly constitutes a protected activity, *see Treglia v. Town of Manlius*, 313 F.3d 713, 719–20 (2d Cir. 2002), and he has alleged that Healthfirst was aware of the complaint, Healthfirst's failure to interview and hire him—the only arguable adverse employment action that was taken against him—occurred prior to his filing of the EEOC complaint. Indeed, Healthfirst's rejection of Conway's applications formed the basis of his EEOC charge. Accordingly, because the alleged adverse employment action occurred before the protected activity, Plaintiff cannot sustain a claim for retaliation on these

grounds. *See, e.g.*, *Moy v. Perez*, 712 F. App'x 38, 40 (2d Cir. 2017) (finding that an adverse promotion decision was not an adverse employment action because "he does not allege prior participation in a protected activity"); *Fraiberg v. 4Kids Entm't, Inc.*, No. 07 CV 01411, 2008 WL 821820, at *2 (S.D.N.Y. Mar. 26, 2008) ("It is logically impossible that the imposition of the General Release requirement was motivated by retaliatory animus since the condition was announced prior to the alleged protected activity.").

## II. Failure to Accommodate Pursuant to the ADA & the Rehabilitation Act

Plaintiff also alleges that Healthfirst failed to accommodate him in violation of federal law.[5] To make out a prima facie case of failure to accommodate under the ADA and the Rehabilitation Act, a plaintiff must plausibly allege that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006). "The employee possesses the initial responsibility to inform the employer that he needs an accommodation and to identify the limitation that needs accommodating." *Schroeder v. Suffolk Cty. Cmty. Coll.*, No. 07-cv-2060 (JFB) (WDW), 2009 WL 1748869, at *14 (E.D.N.Y. June 22, 2009). Once this occurs, "the responsibility for fashioning a reasonable accommodation is shared between the employer and the employee." *Id.* "At this point, the employer must make a reasonable effort to determine an appropriate accommodation based on the particular job involved and consultation with the employee" in what is known as the interactive process. *Id.* "An employee who is responsible for the breakdown of [the] interactive process may

---

[5] The parties again have failed to address whether a prospective employee can assert a failure to accommodate claim against a potential employer. The Court, however, need not determine this issue because Conway has not plausibly stated a prima facie case for failure to accommodate.

11

not recover for a failure to accommodate." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008).

A disability is defined by the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). As such, temporary conditions do not constitute an actionable disability. *See Jackson v. Nor Loch Manor HCF*, 134 F. App'x 477, 478 (2d Cir. 2005) (holding that a surgical procedure requiring a temporary absence from work is "not enough to sustain a claim under the ADA"); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007), *aff'd*, 326 F. App'x 68 (2d Cir. 2009) (holding that the plaintiff "ha[d] not presented evidence from which a reasonable jury could find a permanent or long-term impairment that substantially limited one or more major life activities" where he testified that his back and leg injury lasted eight weeks). Plaintiff has not alleged sufficient facts clarifying whether his heart arrythmia, PTSD, and anxiety are permanent or temporary conditions. *See Patel v. NYU Langone Hosps.*, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (plaintiff's allegations that he had a variety of medical conditions were insufficient to support an inference of disability). The Court is therefore unable to infer that he is a person with a disability under the meaning of the statute.

In any event, Plaintiff has also failed to allege any facts suggesting that Healthfirst had notice of his disability, as he only alleges that he contacted Healthfirst representatives "ask[ing] about possible work accommodations and steps to initiate the process." Compl. ¶ 77. Accordingly, Plaintiff's claims for failure to accommodate pursuant to the ADA and the Rehabilitation Act fail.

### III. Federal Claims Against Christopher Smith Individually

Plaintiff brings his federal claims against Smith individually in addition to Healthfirst. These claims must be dismissed because individuals cannot be held liable under either the ADA or the Rehabilitation Act. *See Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009).

### IV. New York City Law Claims

Finally, Plaintiff has asserted city law claims for retaliation, sex discrimination, age discrimination, and discrimination based on his profession. Pursuant to 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006). Although declining to exercise supplemental jurisdiction in such a case is not "absolutely mandatory," *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998), in "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). As the Court is dismissing Plaintiff's only federal claims, it declines to exercise supplemental jurisdiction over the city law claims and dismisses them without prejudice. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006); *Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 WL 1922624, at *10 (S.D.N.Y. Apr. 21, 2020) ("Because the Court . . . dismissed [the federal] claims early in the litigation, declining jurisdiction over the remaining state and municipal claims would not disserve the principles of judicial economy, convenience, or fairness.").

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is granted. Plaintiff is granted leave to file an amended complaint no later than October 31, 2022—should he have a good faith basis to do so. Failure to do so will result in dismissal of this case with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket 27 and close this case. The Clerk of Court is further directed to mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated:   September 30, 2022
         New York, New York

Ronnie Abrams
United States District Judge