```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/6/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK CONWAY,

                Plaintiff,

                v.

HEALTHFIRST INC. and CHRISTOPHER SMITH

                Defendants.

No. 21-CV-6512 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Patrick Conway, a registered nurse and licensed attorney, brought this action against Healthfirst, Inc., a healthcare management company, asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), in connection with his efforts to obtain a position at Healthfirst. The Court previously dismissed the Second Amended Complaint without prejudice. *See Conway v. Healthfirst, Inc.*, 2022 WL 4813498 (S.D.N.Y. Sept. 30, 2022). Proceeding *pro se*, Conway has filed a Third Amended Complaint ("TAC"), and now before the Court is Defendants' unopposed motion to dismiss.[1] For the reasons that follow, the motion is denied with respect to Conway's retaliation claims under the ADA and the Rehabilitation Act, but is otherwise granted in its entirety.

## BACKGROUND

The facts giving rise to this action, which the Court described at length in its prior opinion, are by now familiar to counsel and the parties. *See Conway*, 2022 WL 4813498, at *1–2. For the

---

[1] Although the filing is labeled "Second AMENDED – Pro Se – COMPLAINT," the parties do not dispute that this is the third amended complaint in the action; accordingly, the Court terms it the Third Amended Complaint.

sake of completeness, new allegations taken from the TAC are included below, which the Court assumes to be true for purposes of the present motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). As pertinent to the present motion, the Court has identified several key distinctions between Conway's earlier allegations in the Second Amended Complaint ("SAC") and the amended pleading now before the Court.

Plaintiff Patrick Conway is a 44-year-old male registered nurse. TAC ¶ 1. He has "significant management experience across his 20 years of professional employment in banking, insurance, healthcare, and law," and, beginning in February 2018 and continuing through July 2020, either applied to or "was recruited to apply for" more than twenty positions at Defendant Healthfirst. *Id.* ¶ 2. Conway "suffers from various disabilities," including "heart disease, cardiovascular-related issues, and congenital-related musculoskeletal problems." *Id.* ¶¶ 1, 19–21. He also has "diagnosed emotional and psychological disease" and a "spinal disc disorder and congenital deformity, and degenerative disc disease." *Id.* ¶ 20. These impairments are "chronic and permanent" and "affect and limit his activities and prevent him from performing a variety of activities and tasks." *Id.* ¶ 21.

Defendant Healthfirst is a healthcare management company. Healthfirst employees began recruiting Conway to apply for open positions at the company beginning in February 2018. *Id.* ¶ 32. Conway was recruited by Marissa McCredie, a senior employee at Healthfirst, along with two other Healthfirst employees, Glickman and Tubens. *Id.* ¶¶ 4, 32. He also communicated with Director Christopher Smith, as well as, eventually, the company's General Counsel. *Id.* ¶ 27. During his communications with the Healthfirst recruiters, Conway inquired about accommodations related to his disabilities. *Id.* ¶ 5. He broadly alleges that Healthfirst thereafter "engaged in a discriminatory pattern and practice of adverse activity, including non-hire, recission

of a job offer, and psychological manipulation to both deter [Conway's] protected activity and dissuade him form [sic] continuing the protected activity he was engaging in with Defendant." *Id*.

> I. **Prior Allegations from the SAC**

Conway's SAC went little further than making the broad, summary allegations listed above in alleging precise requests for accommodations, and largely lacked specificity, such as dates associated with any alleged communications with Healthfirst employees. The SAC alleged that "[t]he correspondence included several emails and calls to and from McCredie, asking about possible work accommodations and steps to initiate the process." SAC ¶ 77; *see also id.* ¶ 86. It also generally alleged that Conway informed Healthfirst that he "required remote work," that he "can drive a car but would rather not," that he "must see doctors occasionally and take time off for appointments," and "*can* work in person, but the less, the better." *Id.* ¶¶ 11–12 (emphasis in original). It further vaguely alleged that, at some point after Conway initially inquired about needing accommodations for any potential position he hoped to obtain, he applied for "multiple jobs" with Healthfirst, *id.* ¶ 21, although it did not specify the exact number of positions. Some time later, Conway allegedly received email responses for at least some of the positions to which he applied, notifying him that, "[b]ased on the required qualifications for this role, we are unable to select you for an interview." *Id.* ¶ 64.

As alleged in the SAC, Conway eventually had a phone conversation with Smith, Healthfirst's "Director of Talent." *Id.* ¶ 39. During this call, Conway reiterated his concerns that he was not granted any interviews after being recruited by Healthfirst and requested that he receive an accommodation, and that the reason given was that he did not possess the "required qualifications" for the roles. SAC, Ex. D at 13. Smith responded that there were several possibilities as to why he may have received that email, including that the positions were actually

filled or that an employee could have "just checked the wrong box." *Id.* at 11, 13. Smith offered to look into the problem for him, and then suggested several open positions at Healthfirst, including telecommuting roles, for which Conway may be a good fit. *Id.* at 14–17.

Following this interaction, Conway filed a complaint with the EEOC, to which Healthfirst responded with its own position statement. SAC ¶ 31. Conway alleges that, during the EEOC proceedings, Healthfirst "lie[d] about what Plaintiff did or said to Healthfirst as an applicant," and made "many ad hominem—and otherwise churlish—attacks against him." *Id.* ¶ 70. During the EEOC proceedings, Healthfirst asserted that the email responses that Conway received to his applications were autogenerated, and that he was "less qualified than other candidates." *Id.* ¶ 71. Conway did not dispute that the emails were indeed autogenerated, but alleges that Healthfirst's "bots targeted [his] resume for rejection," *id.* ¶ 78, and that his applications were subjected to "automated resume review." *Id.* ¶ 87.

## II.    This Court's Prior Opinion & Order

This Court issued a Memorandum Opinion and Order granting Healthfirst's motion to dismiss the SAC last year. *See Conway v. Healthfirst, Inc.*, 2022 WL 4813498 (S.D.N.Y. Sept. 30, 2022). As to his retaliation claims under the ADA and Rehabilitation Act, the Court found, as an initial matter, that "Conway ha[d] plausibly alleged that he engaged in protected activity," and "Defendants knew of the protected activity," satisfying the first two of four elements to state a prima facie claim. *Id.* at *3. The Court further assumed that "Healthfirst's failure to interview [Conway] constituted an adverse action," satisfying the third element, but that Conway's retaliation "claim fail[ed] because he ha[d] not plausibly alleged a causal connection between the protected activity and the adverse employment action." *Id.* at *4.

Among other things, the Court underscored that "Conway d[id] not allege in his complaint

4

many of the relevant dates in question, including the dates on which he initially reached out to Healthfirst about an accommodation, the dates on which he applied for open positions, and the dates on which he received the rejection emails." *Id*. Accordingly, the Court found it could not "infer that there was any temporal proximity between his requests for accommodation and the rejection emails." *Id*. As to Conway's second retaliation claim—premised on the filing of his EEOC complaint—the Court found that, although the "filing of an EEOC complaint clearly constitutes a protected activity … and [Conway] ha[d] alleged that Healthfirst was aware of the complaint, Healthfirst's failure to interview and hire him … occurred prior to his filing of the EEOC complaint" based on the allegations in the SAC. *Id*. at *5.

The Court further granted dismissal as to Conway's failure to accommodate claims pursuant to the ADA and the Rehabilitation Act, his claims against Director Smith individually, and his claims under New York City law. *See id*. at *6. The Court granted Conway leave for further amendment, and, on November 30, 2022, he filed the TAC. *See* Dkt. 51.[2]

### III. Added Specificity in the TAC

The TAC has added new allegations which answer many of the Court's previous concerns regarding a lack of specificity. Among other things, the TAC now alleges that, between February 7, 2018 and July 2020, Conway applied for more than 20 different positions at Healthfirst, listing them out by name and designating Healthfirst's position identifying number for each. *See* TAC ¶ 3, n.1.

The new complaint also goes much further in specifying the dates of certain key communications. First, Conway alleges that Glickman recruited him in February 2018, McCredie

---

[2] The Court notes that the TAC should have been filed no later than October 30, 2022, and that the TAC was thus filed thirty (30) days late. However, in light of the fact that Healthfirst has not made arguments related to Conway's apparent procedural default, the Court here treats the TAC as timely. Conway is admonished to abide by Court-ordered deadlines in the future, and that failure to do so may result in dismissal of any remaining claims.

recruited him in December 2018, and Tubens did the same in May 2019. Throughout 2018 and 2019, given these recruitment efforts, Conway alleges he notified Healthfirst's "recruiters McCredie, Tubens, Glickman, and Director Smith … that he identified as having permanent disabilities." *Id*. ¶ 4. Notably, Conway now alleges that, on March 6, 2019, he emailed Healthfirst's third-party administrator mentioning his request for accommodations. *Id*. ¶¶ 4, 11. On May 13, 2019, Healthfirst allegedly offered Conway an unspecified "telecommute role," *id*. ¶¶ 45, 54, and, approximately one week later, on May 21, 2019, rescinded this offer via email, *id*. ¶¶ 55, 57. Conway alleges that the job offer was rescinded on May 21 "due to retribution for requesting accommodations (March 6, 2019 email) and multiple requests to file an internal complaint against Healthfirst." *Id*. ¶ 8. The same day, Conway allegedly had a phone call with McCredie and Director Smith, which was recorded. *Id*. ¶ 49. On that recorded call, Conway allegedly mentioned "'accommodation' no less than eight (8) times," and Smith made references to "'accommodation[s]' at least two (2) times." *Id*. ¶ 50. "Approximately 12 minutes into the call in May 2019 call [sic] to Smith," after Conway "again used the word accommodation," Smith "stopped him and asked him why he kept using the word accommodation." *Id*. ¶ 51. Conway alleges this was "manipulation to dissuade [him] from applying to jobs and punishment for filing a complaint." *Id*. ¶ 52.

Although "McCredie and Smith promised to help [Conway] find appropriate role[s] to apply to," Conway allegedly never received follow-up information. *Id*. ¶ 37. The next day, May 22, 2019, Conway sent another email to "Careers" at Healthfirst, allegedly again placing Healthfirst employees on notice of his permanent disabilities. *Id*. ¶ 4. Conway sent additional "follow up emails on June 5, 2019 and July 10, 2019" but "never received any follow up information or assistance." *Id*. ¶ 37.

On July 10, 2019, Conway was informed in writing that Healthfirst's General Counsel was reviewing the internal complaint. That same month, Conway allegedly sent an email to Director Smith "requesting to 'cc' General Counsel Ms. Tiano and Compliance Officer Ms. Rao," and "[t]he word 'accommodation' appears five (5) times" in that message. *Id.* ¶ 57. On September 12, 2019, Conway filed a complaint with the EEOC. *Id.* ¶ 59. After that filing, Conway was able to complete another job application with Healthfirst, *id.*, and, several months later, he was asked to answer a second round of questions in connection with his application, *id.* ¶ 60. His application, however, was rejected in late 2020. *Id.* ¶¶ 61–65.

\*   \*   \*

Conway once again brings claims against Healthfirst for retaliation in violation of the ADA, the Rehabilitation Act, and the NYCHRL, as well as failure to accommodate pursuant to the ADA and the Rehabilitation Act. *Id.* ¶¶ 78–91. Conway has not restated his prior claims of sex discrimination, age discrimination, and discrimination based on profession pursuant to the NYCHRL, nor has he repleaded claims against Director Smith individually. Now before the Court is Healthfirst's unopposed motion to dismiss the TAC.[3] *See* Dkts. 54–55. The motion is denied with respect to Conway's retaliation claims, but is otherwise granted.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[3] On January 13, 2023, the Southern District's Office of Pro Se Litigation served a notice to Conway warning, among other things, that failure to respond to Healthfirst's motion may result in dismissal of the action. *See* Dkts. 57–59. No opposition to the motion has since been filed.

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).[4] In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

"When a motion to dismiss is unopposed, the failure to oppose itself does not justify dismissal." *Forde v. Empire State College*, 2011 WL 4376499, at *2 (S.D.N.Y. Sept. 19, 2011). Thus, even when "presented with an unopposed motion to dismiss, the Court may not find for the moving party without reviewing the record and determining whether there is sufficient support for granting the motion." *Allen v. New York City Hous. Auth.*, 2016 WL 722186, at *3 (S.D.N.Y. Feb. 19, 2016). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law;" accordingly, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

---

[4] Although Plaintiff was previously represented by counsel, he has represented himself *pro se* since the Court's prior opinion in this action, including in the filing of the TAC. Because Conway is a licensed attorney in the state of New York, however, his pleadings are not entitled to the "liberal construction" that he requests. *See Morales v. Kavulich & Assocs., P.C.*, 2017 WL 2712948, at *1 (S.D.N.Y. June 15, 2017) (taking judicial notice of bar admissions). The Second Circuit has held that attorneys who represent themselves are not entitled to the special solicitude otherwise given to litigants appearing *pro se*. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

**DISCUSSION**

**I.       The TAC States Retaliation Claims Under the ADA and Rehabilitation Act**

Conway once again alleges that he was retaliated against both for requesting accommodations, and for filing a complaint with the EEOC. "The ADA prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *see* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual … made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). The Rehabilitation Act contains a "similar provision[ ] against retaliation and [is] governed in this respect by the same standards as the ADA." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To state a claim for retaliation under the ADA and Section 504 of the Rehabilitation Act, a plaintiff must plausibly allege that "(1) the employee was engaged in an activity protected by the ADA [or Rehabilitation Act], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno*, 183 F.3d at 159; *see also Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 33 (2d Cir. 2019).

To allege causation, a plaintiff must "plausibly plead a connection between the [adverse] act and his engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "Moreover, the plaintiff must allege that the retaliation was the 'but-for' cause of the employer's adverse action, *i.e.*, that 'the adverse action would not have occurred in the absence of the retaliatory motive.'" *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). At the prima facie stage, causation may be established: "(1) indirectly, by showing that the protected activity was

9

followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *LaSalle v. City of New York*, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015) (citing same).

The Court's prior opinion found that the SAC plausibly alleged facts establishing elements one through three in order to state a claim for Conway's theory of retaliation. *See Conway*, 2022 WL 4813498, at *3–4. That is, the Court found that the SAC plausibly alleged that: (1) Conway had engaged in a protected activity by requesting accommodations; (2) Healthfirst was aware of that activity; and (3) an employment action, whether conceived of as failure to interview or failure to hire, had occurred. *See id*. The Court nonetheless granted dismissal, however, given that the SAC did not make out a prima facie case of causation to establish the fourth element of a retaliation claim. *See id*. at *4. Among other things, the Court specifically faulted the SAC for failing to allege "many of the relevant dates in question, including the dates on which he initially reached out to Healthfirst about an accommodation, the dates on which he applied for open positions, and the dates on which he received rejection emails." *Id*. Unable to "infer that there was any temporal proximity between his requests for accommodation and the rejection emails," the Court agreed with Healthfirst that a prima facie case of causation had not been plausibly alleged. *Id*.

Although somewhat close, on balance the allegations in the TAC adequately cure the defects the Court identified in its prior opinion with respect to Conway's allegations of causation. Conway, for instance, now alleges in key part that he made additional requests for reasonable accommodations in a March 6, 2019 email, TAC ¶ 4, 11, that he was offered a "telecommute role" two months later, on May 13, 2019, *id*. ¶¶ 45, 54, but that, one week later, on May 21, 2019,

Healthfirst abruptly rescinded this offer, *id.* ¶¶ 55, 57. Conway specifically alleges that the decision to rescind the offer was "*due to retribution* for requesting accommodations (March 6, 2019 email) and multiple requests to file an internal complaint against Healthfirst." *Id.* ¶ 8. That causal allegation is then further supported by the TAC's new contentions related to Conway's May 21, 2019 phone call with Smith, wherein Conway asserts he repeatedly mentioned his requests for accommodations, but was cut off by Smith, who then engaged in "manipulation to dissuade [Conway] from applying to jobs and punishment [sic] for filing a complaint." *Id.* ¶ 52.

To be sure, as Healthfirst rightly observes, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very' close." *Clark Ct. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). And Healthfirst identifies cases finding a two-month gap too lengthy to establish an inference of a causal connection. *See, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998); *Talbott-Serranto v. Iona College*, 2022 WL 3718346, at *14 (S.D.N.Y. Aug. 29, 2022) (citing cases); *Graham v. Macy's, Inc.*, 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016) ("[C]ourts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship.").

But the Court is unaware of authority holding that a two-month gap between protected activity and adverse employment action constitutes a hard outer-limit for allegations sufficient to state a prima facie case for an inference of causation. Rather, the Second Circuit has expressly confirmed that it "has *not* drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (emphasis added). And courts

11

have found lengthier periods sufficient to survive 12(b)(6) dismissal. *See, e.g., Suggs v. Porth Auth. of N.Y. & N.J.*, 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) (six months between filing of EEOC complaint and firing suggested causal relationship); *Bernhardt v. Interbank of N.Y.*, 18 F. Supp. 2d 218, 226 (E.D.N.Y. 1998) (eleven months between protected activity and firing might suggest causal relationship); *Stephens v. State Univ of N.Y. at Buffalo*, 11 F. Supp. 2d 242, 250 (W.D.N.Y. 1998) (six months between EEOC complaint and filing of disciplinary report might show causal connection); *see also Munoz v. Sociedad Espanola De Auxilio Mutuo y Beneficiencia De Puerto Rico*, 671 F.3d 49, 56 (1st Cir. 2012) (finding five year gap between protected activity and adverse employment decision not "too remote to establish causality" where it was not the "only" evidence of retaliation). Notably, however, the period at issue here—from March 6, 2019 to May 21, 2019—is only two weeks longer than the two-month window of time Healthfirst concedes would be sufficient to plausibly allege a causal connection.

In any event, accepting the allegations in the TAC as true—particularly those with respect to the May 21, 2019 phone call Conway shared with Director Smith—Conway's theory of causation is not based merely on the time period at issue between his request for accommodations and the job rescission. The Court thus finds that facts supporting an inference of causation have been plausibly alleged.

As to Conway's second retaliation claim—premised on Healthfirst's purported retaliation following the filing of his EEOC complaint—the Court previously found that, although the "filing of an EEOC complaint clearly constitutes a protected activity, *see Treglia v. Town of Manlius*, 313 F.3d 713, 719–20 (2d Cir. 2002), and [Conway] ha[d] alleged that Healthfirst was aware of the complaint, Healthfirst's failure to interview and hire him … occurred *prior to* his filing of the EEOC complaint," based on the allegations in the SAC. *Id*. at *5. Conway has cured this

12

deficiency as well, now alleging a second series of events which transpired in the months *after* he filed an EEOC complaint in September 2019. *See* TAC ¶¶ 59–67.

To be clear, the Court today takes no position as to whether Conway will, or is likely to ultimately prevail on his retaliation claims. Indeed, the allegations of causation contained in the TAC are thin, and the Court remains skeptical that Conway will be able to demonstrate that the "but-for" cause of Healthfirst's decision to rescind any position offered (or engage in any other adverse employment action) was due to Conway's request for reasonable accommodations or his filing of an EEOC complaint. Indeed, even according to Conway's allegations, McCredie and Smith offered their assistance to him to find an appropriate position after his request for accommodations (although they never followed-up), *see id.* ¶ 37, and Conway evidently was asked to submit additional answers to questions on an application after he filed his EEOC complaint (although the TAC does not specify whether he ever did so), *see id.* ¶ 60. *See also Conway*, 2022 WL 4813498, at *4 ("While the Court is not making any factual determinations at this time, it is worth noting that, rather than suggesting retaliatory animus, Conway's conversations with McCredie and Smith . . . appear to suggest the absence of any such motive."). Nevertheless, at this early stage, accepting the TAC's allegations as true as the Court must, Conway has stated a prima facie case of causation sufficient to survive Healthfirst's motion to dismiss his retaliation claims under the ADA and Rehabilitation Act.

**II.     The TAC Fails to State a Retaliation Claim Under the NYCHRL**

Conway's retaliation claim brought under the NYCHRL, however, fails to state a claim because, critically, requesting an accommodation for a disability did not qualify as a protected activity under that law at the time of the relevant activity alleged in the TAC. *See D'Amico v. City of New York*, 159 A.D.3d 558, 558–59 (N.Y. App. Div. 2018) ("Neither plaintiff's request for a

reasonable accommodation nor his filing of an internal workers' compensation claim constitutes protected activities for purposes of the State and City HRLs."); *Witchard v. Montefiore Med. Ctr.*, 103 A.D.3d 596, 596 (N.Y. App. Div. 2013) ("Under both New York State and New York City Human Rights Laws, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim."). Although the NYCHRL was ultimately amended on November 11, 2019, such that requesting an accommodation today qualifies as a protected activity, that amendment was not retroactive. *See Piligian v. Icahn Sch. Of Med.*, 490 F. Supp. 3d 707, 724 (S.D.N.Y. 2020) (noting that the "amendment contains no retroactivity provision," and finding that it "is not retroactive, and that under the previous version of the NYCHRL, a request for accommodation is not a protected activity"). Accordingly, the motion to dismiss the retaliation claim brought under the NYCHRL is granted.

### III. The TAC Fails to State Failure to Accommodate Claims

Conway's two remaining causes of action, for failure to accommodate brought under the ADA and Rehabilitation Act, fail for reasons identified in the Court's last opinion and order in this action. To briefly restate the relevant law, to make out a prima facie case of failure to accommodate, a plaintiff must plausibly allege that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue, and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006).

Even were the Court to assume that Conway can bring failure to accommodate claims against a prospective employer,[5] his claims would falter at the threshold inquiry for failing to allege

---

5   The parties have again failed to address whether a prospective employee can assert a cognizable failure to

facts plausibly supporting the first element. That is, it is not sufficient for a plaintiff to plausibly allege diagnosis of a permanent disability; rather, they must allege facts showing that the diagnosed disability substantially restricted them from engaging in a major life activity. *See Patel v. NYU Langone Hosp*. 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (holding a *pro se* plaintiff's allegations that he had a plethora of medical conditions was insufficient); *see also Ray v. Weit*, 2015 WL 1299198, at *6 (E.D.N.Y. Mar. 20, 2015) ("Ray has not alleged facts regarding the manner or duration of her alleged conditions to indicate that they restrict any major life activity to the extent required under the ADA beyond her assertions that they contribute to her lateness along with her 'transportation problems,' which she does not define."). Although Conway alleges that he suffers from various ailments, and indeed that some are permanent in nature, he does not allege any facts about how those disabilities substantially restrict him from engaging in a major life activity. While he alleges that he suffers from "Spinal disc disorder and congenital deformity," for instance, which cause "chronic physical intractable pain," TAC ¶ 20, he offers no specific allegations supporting the broad conclusory claim that these conditions "affect and limit his activities and prevent him from performing a variety of activities and tasks," *id*. ¶ 21.

In any event, the TAC fails to show that Conway would have been able to perform the roles to which he applied, even were the Court to assume that the first and second elements of a prima facie case for failure to accommodate were satisfied. The TAC does not allege any facts about the jobs which Conway was denied, apart from the title names, which provide any insight into the essential functions of those jobs, the nature of the accommodations Conway would have required, or how such accommodations would have enabled him to discharge the duties of those jobs. *See Brown v. Parcel Serv. Incrop.*, 2022 WL 4077775, at *3 (N.D.N.Y. Sept. 6, 2022) ("Plaintiff's

---

accommodate claim against a potential, rather than actual, employer. The Court need not reach the issue, however, because Conway has, in any event, not plausibly stated a prima facie case for failure to accommodate.

complaint does not allege the 'essential functions' or 'fundamental job duties' of the Personal Seasonal Delivery Driver position or that he was able to perform those functions.").

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is denied with respect to Conway's retaliation claims brought under the ADA and Rehabilitation Act, but, given that this is Conway's fourth unsuccessful attempt to allege plausible claims, is otherwise granted with prejudice. *See Weinreb v. Xerox Bus. Servs. LLC Health and Welfare Plain*, 323 F. Supp. 3d 501, 52 (S.D.N.Y. 2018) (dismissing claims with prejudice in light of the "repeated failure to plead a sustainable cause of action"). No later than September 20, 2022, the parties shall file a joint letter proposing next steps in this action.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 54. The Clerk of Court is further directed to mail a copy of this Order to Plaintiff Conway.

SO ORDERED.

Dated:   September 6, 2023
         New York, New York

                                            _____
                                            Hon. Ronnie Abrams
                                            United States District Judge