UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PATRICK CONWAY,

                            **Plaintiff,**

            **-against-**

HEALTHFIRST INC.,

                        **Defendant.**

-----------------------------------------------------------------X

**21-cv-06512 (RA)(SN)**

**REPORT &
RECOMMENDATION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/8/2024

**SARAH NETBURN, United States Magistrate Judge**.

**TO THE HONORABLE RONNIE ABRAMS:**

On November 13, 2023, the parties to this employment dispute appeared for a settlement conference and reached an oral agreement. They accepted the terms of the agreement on the record and intended to memorialize them in writing. Def. Br., ECF No. 85 at 5. After the Plaintiff refused to sign a proposed written agreement and moved to reopen the case, the Defendant filed a motion to enforce the settlement agreement. Judge Abrams referred the motion to me for a report and recommendation. For the reasons set forth below, I recommend that the district court GRANT the Defendant's motion to enforce the settlement agreement and dismiss Plaintiff's complaint.

## BACKGROUND

Plaintiff Patrick Conway ("Conway") is a registered nurse and licensed attorney in the state of New York. Third Am. Compl. ¶ 1. Healthfirst, Inc. is a not-for-profit, health insurance

company. It is supported by employees of its Manhattan-headquartered subsidiary, Defendant

HF Management Services, LLC ("Healthfirst").[1] Def. Br. at 2.

Conway sued Healthfirst, asserting multiple causes of action under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 701,

*et seq.*, and New York City Human Rights Law based on his efforts to obtain employment at

Healthfirst. The district court granted Healthfirst's motion to dismiss the third amended

complaint with respect to all claims except Conway's retaliation claims under the ADA and the

Rehabilitation Act. ECF No. 60.

On November 13, 2023, Conway and Healthfirst appeared before me for a settlement

conference. Conway appeared *pro se* and Healthfirst appeared through counsel, accompanied by

a representative authorized to settle on behalf of the company. See November 13, 2023

Settlement Conference Transcript ("Tr."), ECF No. 84-1. After a conference held off the record,

the parties reached an agreement regarding certain material settlement terms. The Court then

brought the proceeding onto the record to note the existence of certain material terms of the

agreement and to create a binding oral contract among the parties. Neither party objected to the

Court's declaration that the parties would be entering into a binding oral contract, and neither

party reserved the right not to be bound absent a written agreement. The Court set out the

following material terms of the agreement:

> The defendants are going to pay the plaintiff ███.[2] Mr. Conway, that needs to
> be paid by an electronic funds transfer. So you need to just provide information to

---

[1] Conway appears to have sued Defendant under the wrong name ("Healthfirst Inc."). See Def. Br. at 1.
Notwithstanding this confusion, the Court refers to the Defendant as "Healthfirst" in accordance with how the
parties' names appear on the docket.

[2] "The common law right of public access to judicial documents is firmly rooted in our nation's history." Lugosch v.
Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). This strong presumption of access "is based on the
need for federal courts . . . to have a measure of accountability and for the public to have confidence in the
administration of justice." Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)). Thus, despite
the parties' agreement that the terms of the settlement should be confidential, and the Court's initial permission to
file confidential portions under seal, the presumption of public access warrants disclosure of the material terms. The

the defendants as to how that wire transfer should happen. But there'll be a payment of ███████ within 30 days of execution of the settlement agreement. In addition to that payment amount, Mr. Conway will warrant and represent that he will not reapply for any position with the defendants. He agrees to full confidentiality of the settlement agreement, including the dollar amount that's being paid and all of the terms of the agreement. The parties will execute mutual general releases which will release both sides of any and all liability from the beginning of time until the date of the execution of the settlement agreement. That'll include all claims that could possibly have been brought.

Tr., 4–5.

The Court asked the parties if there was anything missing from the Court's recitation of the material terms and whether Mr. Conway understood the material terms of the agreement:

**COURT:** All right. Mr. Conway, are there any other terms that you believe are material to this settlement agreement?

**MR. CONWAY:** No, Your Honor.

**COURT:** Okay. And do you understand all of these terms?

**MR. CONWAY:** Yes, Your Honor.

**COURT:** Okay. Mr. Warner, anything that I've omitted?

**MR. WARNER:** No, I don't think so.

**COURT:** Okay. All right. Mr. Conway, do you understand the terms of this settlement agreement?

**MR. CONWAY:** Yes.

**COURT:** And do you accept them?

**MR. CONWAY:** Yes.

**COURT:** And do you understand that accepting these terms, you are entering into a binding and enforceable oral agreement?

**MR. CONWAY:** Yes.

---

Court, however, finds that the settlement sum is not relevant to the Court's decision and the public's interest in that dollar amount is outweighed by the parties' privacy interests as reflected by the agreement itself. Accordingly, only the settlement sum is redacted.

> **COURT:** And you understand that the parties intend to memorialize this agreement in writing, but you are now bound by the oral agreement. Do you understand that?
>
> **MR. CONWAY:** Yes.

Id. at 6–7. Healthfirst's representative then stated her authority to bind Healthfirst and accepted the terms of the agreement on behalf of Healthfirst. Id. at 7–8.

The day after the parties settled, the district court discontinued the action without prejudice to restoring the action if the application to restore is made within 60 days. A few days later, Healthfirst provided Conway with a draft of the written settlement agreement. Warner Decl. ¶ 3, ECF No. 84. Susanne Toes Keane entered a notice of limited appearance of *pro bono* counsel for the purpose of settlement matters and, on December 4, 2023, she informed Healthfirst that Conway was unwilling to sign the written agreement because he "changed his mind about his commitment to refrain from submitting further applications for employment at Healthfirst." Def. Br. at 6.

The district court granted Conway's timely application to reopen the action after the parties were unable to finalize a written document memorializing the settlement. The parties continued settlement discussions and appeared before me again on January 30, 2024, to resolve the outstanding issues. On February 26, 2024, Conway's *pro bono* attorney advised the Court that Conway "declined to accept the settlement agreement and wishes to proceed with the litigation of this matter." ECF No. 81. Healthfirst then moved to enforce the settlement agreement entered into on November 13, 2023 (the "Settlement Agreement"), and dismiss the complaint with prejudice. ECF No. 83. Conway did not oppose Healthfirst's motion after the Court *sua sponte* extended his deadline. ECF No. 91.

**DISCUSSION**

## I.    Legal Standard

The Court of Appeals for the Second Circuit has not resolved the question of whether federal or state law should govern the enforcement of settlement agreements. See, e.g., Acun v. Merrill Lynch Pierce Fenner & Smith, Inc., 852 F. App'x 552, 553 n.1 (2d Cir. 2021); Powell v. Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007); Ciaramella v. Reader's Dig. Ass'n, 131 F.3d 320, 322 (2d Cir. 1997). District courts in this Circuit routinely apply federal common law in cases involving a motion to enforce an oral settlement agreement. See, e.g., Pierre v. Chase Inv. Servs Corp., No. 10-cv-1740 (SAS), 2013 WL 709055 (S.D.N.Y. Feb. 25, 2013), reconsideration denied, 2013 WL 1287330 (S.D.N.Y. Mar. 28, 2013); Alvarez v. City of New York, 146 F. Supp. 2d 327, 335 n.6 (S.D.N.Y. 2001). The Court of Appeals has noted that there is "no material difference between New York contract law and federal common law regarding the enforceability of oral settlement agreements." Acun, 852 F. App'x at 553 n.1 (citing Powell, 497 F.3d at 129 n.1). Consequently, I acknowledge the same and apply federal law to evaluate the motion before me.

## II.    Enforceability of the Settlement Agreement

"A settlement agreement is a contract that is interpreted according to general principles of contract law." Powell, 497 F.3d at 128 (citing Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005)). An oral settlement agreement is enforceable and does not need to be reduced to writing if it "is entered into voluntarily on the record in open court," and the parties "manifested an intention to be bound by it." Acun, 852 F. App'x at 554 (citing Powell, 497 F.3d at 129–30). The parties here entered into an oral settlement agreement voluntarily on the record by virtue of their unequivocal responses during the first settlement conference—they do not

5

dispute this issue. That said, "if either party communicates an intent not to be bound until he achieves a fully executed document," the oral settlement agreement cannot be binding. Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985) (citing R.G. Group v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984)). Notably, Conway has not filed an opposition disputing the existence of an enforceable oral settlement agreement.

To determine whether the parties showed an intent to be bound by an oral contract in the absence of an executed written document, the Court of Appeals has identified four factors for courts to consider:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id. (citation omitted). No single factor is dispositive, but each offers the Court "significant guidance" in evaluating the parties' intentions. Ciaramella, 131 F.3d at 323 (citing R.G. Group, 751 F.2d at 74–75).

### A.    Express Reservation

"The first Winston factor—whether the parties expressly reserved the right not to be bound absent a writing . . . is frequently the most important.'" Acun, 852 F. App'x at 554 (quoting Brown v. Cara, 420 F.3d 148, 154 (2d Cir. 2005)). For this factor, courts consider "whatever manifestations the parties have made to one another on the subject of intent to be bound on reaching an oral agreement." Id.

Here, the Court asked the parties if they understood that they were entering into a "binding and enforceable oral agreement" by accepting the terms of the Settlement Agreement. Tr., 7. Conway and Healthfirst both answered in the affirmative. See Acun, 852 F. App'x at 554 ("The magistrate judge further confirmed with Acun personally and in open court that he was

'entering into a binding and enforceable *oral* agreement.'"). Furthermore, Conway affirmed that he understood he was bound by the oral agreement even though the parties intended to memorialize the Settlement Agreement in writing. Tr., 7.

Although the parties were directed to reduce the terms of their agreement to writing, that fact alone does not preclude enforcement under the oral agreement. See Galanis v. Harmonie Club of City of New York, No. 13-cv-4344 (GHW), 2014 WL 4928962, at *8 (S.D.N.Y. Oct. 2, 2014); Shape CD, Ltd. v. Quiksilver, Inc., No. 07-cv-2033 (PKC), 2008 WL 2009668, at *2 (S.D.N.Y. May 6, 2008) (citing Winston, 777 F.2d at 78) ("The absence of a fully executed settlement agreement need not be fatal to enforcement, even if one were originally contemplated by the parties.")). The record strongly supports the conclusion that the parties did not expressly reserve the right not to be bound in the absence of a written document. Thus, the first Winston factor weighs heavily in favor of enforcement.

## B.    Partial Performance

"Partial performance favors enforcement when 'one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement.'" Acun, 852 F. App'x at 554 (quoting Ciaramella, 131 F.3d at 325).

Here, neither party affirmatively took any additional action required of them under the settlement agreement. Healthfirst points to the cessation of litigation and the drafting of settlement papers as evidence of partial performance, citing Oparah v. N.Y.C. Dep't of Educ., No. 12-cv-8347 (JGK)(SN), 2015 WL 4240733, at *6 (S.D.N.Y. July 10, 2015). In Oparah, however, counsel for both parties discussed the settlement documents and "agreed to a final version of them," and one party only failed to sign them due to surgery. Id. By comparison, Healthfirst simply drafted a proposed written agreement and sent it to Conway. "[T]here is no

7

indication that plaintiff[] thereafter acquiesced in its terms or otherwise induced any reliance by defendant[]." Langreich v. Gruenbaum, 775 F. Supp. 2d 630, 636 (S.D.N.Y. 2011) (rejecting the argument that drafting the written agreement constituted partial performance). Thus, the work that Healthfirst performed with respect to the proposed written agreement does not constitute partial performance. Healthfirst's lack of performance, however, is largely a result of Conway's unwillingness to execute the settlement in writing. Healthfirst's obligation to pay Conway under the settlement is conditioned on this execution. Tr., 4–5. There is also no indication that Conway provided Healthfirst with his financial information so that Healthfirst could pay him by an electronic funds transfer, or represented that he will not reapply for any position with Healthfirst.

Granted, the pause in litigation between the parties may "indicate their understanding that they had reached a settlement at the conference." Acun v. Merrill Lynch, Pierce, Fenner & Smith, No. 18-cv-7217 (GBD)(SN), 2020 WL 995887, at *3 (S.D.N.Y. Mar. 2, 2020) aff'd, Acun, 852 F. App'x 552. The parties ceased litigating after the November 13, 2023 settlement conference, seeking no discovery or filing any motions for summary judgment—activities which may have been anticipated if the parties had not settled at the conference. In any case, "the absence of partial performance is at best neutral," so this factor would not count against enforcing the Settlement Agreement. Acun, 852 F. App'x at 555; see Doe v. Kogut, No. 15-cv-07726 (SN), 2017 WL 1287144, at *7 (S.D.N.Y. Apr. 6, 2017) (concluding that the second Winston factor does not "tip the balance in either direction" because "the lack of partial performance was caused by the withdrawal of [the] plaintiff's former counsel" and the plaintiff's subsequent unwillingness to execute any settlement), aff'd, 759 F. App'x 77 (2d Cir. 2019). On balance, the lack of partial performance here is a neutral factor.

### C.    Agreement Over Material Terms

Under the third Winston factor, the Court determines whether the parties agreed to all of the material terms in their oral agreement. See Powell, 497 F.3d at 130; Ciaramella, 131 F.3d at 325; Winston, 777 F.2d at 82. "[P]arties may choose to bind themselves before fully agreeing to all terms provided that the parties have agreed to the material terms." Tangtiwatanapaibul v. Tom & Toon Inc., No. 20-3852, 2022 WL 17574580, at *3 (2d Cir. Dec. 12, 2022) (citing Powell, 497 F.3d at 130).

The third Winston factor is satisfied if "there was literally nothing left to negotiate." Acun, 852 F. App'x at 555 (internal quotation marks omitted) (quoting Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 831 (2d Cir. 2019)). "Just because parties subsequently attempt to add terms to a written document, or disagree over language in drafting a written agreement, does not mean that their oral agreement is not enforceable, particularly where the oral agreement is clear and unambiguous." Aguiar v. New York, No. 06-cv-03334 (THK), 2008 WL 4386761, at *7 (S.D.N.Y. Sept. 25, 2008), aff'd as modified, 356 F. App'x 523 (2d Cir. 2009).

At the November 13, 2023 settlement conference, the Court recited the material terms of the settlement on the record. Both parties had an opportunity to be heard and to assent, reject, or seek modification of those terms. Neither party showed confusion or reservation with respect to the recited terms. Conway responded in the negative when the Court asked if he thought there were any other material terms to the Settlement Agreement that were not put on the record. Tr., 6. Overall, this factor weighs in favor of enforcement.

### D.    Form of Agreement

The fourth Winston factor asks "whether this agreement is the kind that would normally be reduced to writing." Powell, 497 F.3d at 130. In Acun, the Court of Appeals clarified this factor: "what Winston had in mind in this reference to a writing . . . is a written instrument whose status as a binding contract has been acknowledged either by signature or by express oral acceptance." Acun, 852 F. App'x at 556. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Doe, 759 F. App'x at 81 (internal quotation omitted). The in-court recitation of the terms of an oral settlement agreement, to which the parties personally assented to on the record, is "akin to that of a memorializing writing." Acun, 852 F. App'x at 556 (internal quotation marks omitted) (quoting Powell, 497 F.3d at 131). Further, a written transcript of the terms agreed upon at the November 13, 2023 settlement conference accompanied the reading and placement of the material terms of the agreement on the record. See id. (among other indications of formality, a complete transcript documenting the oral agreement weighs in favor of enforcement under the fourth Winston factor). The Settlement Agreement is an oral agreement made on the record in open court, and it is therefore as binding as an agreement memorialized in writing.

The terms of the settlement here are also "not particularly complex." Kogut, 759 F. App'x at 81 (finding that a settlement requiring the plaintiff to release her claims and halt proceedings in exchange for a monetary payment and a mutual non-disparagement agreement is not sufficiently complex to require a written contract). Therefore, the fourth Winston factor weighs in favor of enforcing the Settlement Agreement.

**III.    Terms of the Settlement**

On this record, I find that the parties have agreed to be bound by a settlement agreement

that includes the following terms:

- Healthfirst will pay Conway ███████.

- Conway warrants and represents that he will not reapply for any position with Healthfirst.

- The parties agree to mutual general releases, which will release both sides of any and all liability from the beginning of time until the Court's final decision on this motion.

**CONCLUSION**

The first, third, and fourth <u>Winston</u> factors weigh strongly in favor of finding a binding

oral settlement agreement, and I therefore recommend that the Defendant's motion to enforce

settlement and dismiss the complaint with prejudice be GRANTED.

_____

SARAH NETBURN

United States Magistrate Judge

DATED:    August 8, 2024
          New York, New York


\*              \*              \*


**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have 14 days from the service of this Report and Recommendation to

file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure. <u>See</u> Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections

within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); <u>see</u> Fed. R. Civ. P. 6(a),

6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Ronnie Abrams if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Abrams. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).